UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY PURIFOY,

                    Petitioner,                          Case Number 05-10333
                                                          Honorable David M. Lawson

v.

ANDREW JACKSON,

                    Respondent,

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

The petitioner, Gregory Purifoy, presently confined at the Mound Correctional Facility in Detroit, Michigan, has filed a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner was convicted by a jury in the Wayne County, Michigan circuit court of assault with intent to commit murder, felonious assault, and possession of a firearm in the commission of a felony. The petitioner was sentenced to fifteen to thirty years imprisonment on the assault with intent to commit murder conviction, two to four years on the felonious assault conviction, and a consecutive two years on the firearm conviction. The petitioner alleges that there was insufficient evidence to convict him of assault with intent to commit murder, the prosecutor committed various forms of misconduct, and he was deprived of the effective assistance of trial and appellate counsel. The respondent has filed an answer to the petition, asserting that the claims are procedurally defaulted and lack merit. The Court finds that petitioner's claims are meritless, and therefore the petition will be denied.

I.

The petitioner's conviction arose from an incident which took place in Detroit, Michigan on June 7, 1999. Detroit Police officers Gary Pritt and Matthew Gnatek were on patrol when they received a radio call to go to 725 Whitmore Street in Detroit, Michigan regarding a black male firing gunshots into the air. As the police approached the address, they observed two black males walking south on the sidewalk on Third Street. The officers approached the men from the rear. The officers identified one of the men as petitioner.

Officer Pritt testified that he stopped his police vehicle when he was next to the two men. Officer Pritt testified: "As I opened my door, the defendant faced towards me. Looked at me. Pulled a weapon from his waistband, at which time I began to draw my weapon." Trial Tr. 4/25/2000, 23. Officer Pritt's testimony continued:

| | |
|---|---|
| Q | How far was the defendant from you or from the car door when he looked at you and draw [sic] the weapon? His weapon? |
| A | Approximately ten to fifteen feet. |
| Q | Something more like from me to you? |
| A | Probably, yes. |
| Q | So he was on the sidewalk? Your car was in the middle of the street? |
| A | Yes, it was. |
| Q | So at that point you see him pull a gun, you pulled yours? |
| A | Correct. |
| Q | What happened next? |
| A | He fired one shot. |
| Q | Who did? |
| A | The defendant did. |
| Q | Did you see in what direction he fired one shot? |
| A | Yes. He fired at me. |
| Q | Can you tell this jury exactly what you see on the defendant? For example, did he do this? Did he do that? Did he aim? What did he do exactly, if you remember? |
| A | He pulled a gun from his right hip. Fired the weapon in my direction. Fired one shot, at which time – |
| Q | Did he take aim? Did he take time to aim at you? |
| A | He didn't sight in at me. He pulled the weapon, pointed it at me and pulled the trigger. |

-2-

Trial Tr. 4/25/2000, 23-24.  Pritt returned fire.  The petitioner then ran north on Third Street toward an apartment building at 725 Whitmore Street.  The petitioner broke out a glass window in a door to enter the building.  Before entering the building, the petitioner turned in the direction of Officer Pritt and raised the weapon at the officer, at which time the officer fired a second shot at the petitioner.

Officer Gnatek's testimony was similar to Officer Pritt's rendition of the facts.  Officer Gnatek testified that as he exited the police car, he "observed the defendant pull an unknown handgun from his waistband, at which time he turned in my direction, looked right at me and fired off a single round."  Trial Tr. 4/25/2000, 115.  Gnatek was at the back of the scout car when this happened.  Officer Gnatek testified that "I believe he was trying to shoot me."  *Id.* at 116.  Neither officer observed a flash from the petitioner's gun.  Officer Gnatek fired a shot back at the petitioner.  Officer Gnatek also heard another shot coming from Officer Pritt's direction.

Other officers responded to the area to assist Officers Pritt and Gnatek.  One officer observed the petitioner jump out of a bedroom window in the apartment building on Whitmore Street.  The officer recovered a nine millimeter blue steel automatic weapon from a mattress in the room from which the petitioner jumped.  The petitioner was arrested and taken to the hospital.  A nine millimeter round was found in his clothing.

The petitioner was charged with two counts of assault with intent to commit murder – one for each of the two officers – and possession of a firearm in the commission of a felony.  The officers testified at trial as indicated above.  In addition, an evidence technician testified that only one spent .40 caliber shell was recovered on Third Street.  The technician testified that if both police

firearms, which were .40 caliber weapons, had been fired, there should have been two spent .40 caliber shells recovered from the crime scene.

The evidence also revealed that the gun recovered from the bedroom was the one that discharged the spent shell found on Third Street, as well as some other spent shells recovered on Whitmore Street. Police performed a nitrate test on the petitioner, which showed gunshot residue on the petitioner's right hand.

The defense rested without calling any witnesses. However defense counsel informed the court at sentencing, "[A]lthough it was not any – the witness did not testify, but in the reports, the witness was not – could not be located. There was a witness who was the girlfriend of Mr. Purifoy who did, in fact, indicate in her statement to the police at the time that Mr. Purifoy, right prior to this shooting, had come into the apartment and was drunk, had been drinking, and had been assaulted himself." Sentencing Tr. 5/17/2000 at 5-6.

The jury returned the following verdict: on Count One, which charged assault with intent to commit murder upon officer Gary Pritt, guilty of the lesser offense of assault with a dangerous weapon; on Count Two, guilty as charged of assault intent to commit murder upon officer Matthew Gnatek; and on Count Three, guilty of possession of a firearm in the commission of a felony.

The petitioner filed a direct appeal of his conviction raising three grounds:

I.      THE EVIDENCE PRODUCED AT TRIAL WAS INSUFFICIENT TO SUPPORT A FINDING THAT THE DEFENDANT ASSAULTED OFFICER GNATEK WITH INTENT TO MURDER.

II.     DEFENDANT WAS DENIED A FAIR TRIAL WHERE THE PROSECUTOR PROMPTED A POLICE OFFICER TO TESTIFY THAT "HE KNEW OF DEFENDANT" AND THAT "I BELIEVE I'VE INVESTIGATED THE DEFENDANT BEFORE" THUS INTRODUCING HIGHLY IMPROPER AND HIGHLY PREJUDICIAL INNUENDO.

-4-

III.   THE PROSECUTOR DEPRIVED MR. PURIFOY OF HIS STATE AND
FEDERAL CONSTITUTIONAL DUE PROCESS RIGHTS TO A FAIR
TRIAL BY ENGAGING IN REPEATED AND PREJUDICIAL
MISCONDUCT IN CLOSING ARGUMENTS.

The petitioner's conviction was affirmed on appeal. *People v. Purifoy,* 2002 WL 484441

(Mich. Ct. App. March 26, 2002). The Michigan Supreme Court denied the petitioner's delayed

application to appeal because it was "not persuaded that the questions presented should be reviewed

by this Court." *People v. Purifoy*, 467 Mich. 910, 655 N.W.2d 556 (2002). The Michigan Supreme

Court also denied the petitioner's motion for reconsideration. *People v. Purifoy*, 467 Mich. 910, 658

N.W.2d 488 (2003). The petitioner thereafter filed a post-conviction motion for relief from

judgment, arguing five new grounds:

I.   DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE
ASSISTANCE OF TRIAL COUNSEL, IN VIOLATION OF THE SIXTH
AND FOURTEENTH AMENDMENTS TO THE FEDERAL
CONSTITUTIONS, AND THE MICHIGAN CONSTITUTION OF 1963,
ARTICLE 1, §17, WHERE TRIAL COUNSEL'S FAILURE TO MOVE
FOR A DIRECTED VERDICT OF ACQUITTAL ON THE CHARGED
OFFENSE, PRECIPITATED DEFENDANT-APPELLANT'S
CONVICTION ON INSUFFICIENT EVIDENCE RESULTING IN A
STRONG MISCARRIAGE OF JUSTICE.

II.   DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE
ASSISTANCE OF TRIAL COUNSEL, IN VIOLATION OF THE SIXTH
AND FOURTEENTH AMENDMENT TO THE FEDERAL
CONSTITUTION, AND THE MICHIGAN CONSTITUTION OF 1963,
ARTICLE 1, §17, WHERE TRIAL COUNSEL FAILED TO REQUEST AN
INSTRUCTION OF VOLUNTARY INTOXICATION WHERE SUCH
INSTRUCTION WAS WARRANTED BY THE EVIDENCE, WHICH
RESULTED IN A MISCARRIAGE OF JUSTICE.

III.   DURING CLOSING REBUTTAL ARGUMENTS THE PROSECUTOR
IMPROPERLY COMMENTED THAT "I DON'T BELIEVE THERE'S
NOTHING IN THE RECORD THAT IMPEACHES OFFICER GNATEK'S
TESTIMONY, THAT THERE'S NOTHING THAT SHOWS OFFICER
GNATEK HESITATED ABOUT ANYTHING.   ANYTHING HE
TESTIFIED TO.   NOTHING".   THESE COMMENTS ARE HIGHLY

-5-

PREJUDICIAL WHERE THEY DRAW THE JURY'S ATTENTION TO THE LACK OF TESTIMONY FROM THE ACCUSED, WHICH THE ACCUSED HAVE A 5TH AMENDMENT RIGHT TO ELECT NOT TO TESTIFY.

IV.     DEFENDANT-APPELLANT'S 6TH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WAS VIOLATED WHERE COUNSEL FAILED TO OBJECT TO THE PROSECUTOR'S IMPROPER CLOSING REBUTTAL ARGUMENTS.

V.      APPELLATE COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE IN FAILING TO RAISE THESE ISSUES ON THE APPEAL AS OF RIGHT.

The trial court denied the post-conviction motion by a written opinion. *People v. Purifoy,* 99-006318 (Third Circuit Court, February 6, 2004). The Michigan appellate courts denied the petitioner leave to appeal. *People v. Purifoy*, No. 255486 (Mich. Ct. App. December 16, 2004), *lv. den.* 474 Mich. 895, 705 N.W.2d 129 (2005).

The petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I.      Whether the evidence produced at trial was insufficient to support a finding that the defendant assaulted Officer Gnatek with intent to murder.

II.     Whether defendant was denied a fair trial where the prosecutor prompted a police officer to testify that "he knew of defendant" and "I believe I've investigated the defendant before" thus introducing improper and highly prejudicial innuendo.

III.    The prosecutor deprived Mr. Purifoy of his State and Federal Constitutional due process right to a fair trial by engaging in repeated and prejudicial misconduct in closing arguments.

IV.     Defendant-Appellant was denied the effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments to the Federal Constitution, and the Michigan Constitution of 1963 Article 1, § 17 where trial counsel's failure to move for a directed verdict of acquittal on the charged offense, precipitated defendant-appellant's conviction on insufficient evidence resulting in a miscarriage of justice.

V.      Defendant-Appellant was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the federal constitution,

-6-

and the Michigan Constitution of 1963 Article 1 § 17 where trial counsel failed to request an instruction on voluntary intoxication where such instruction was warranted by the evidence which resulted in a miscarriage of justice.

VI.    During closing rebuttal arguments the prosecutor improperly committed that "I don't believe there's nothing in the record that impeaches Officer Gnatek's testimony, that there's nothing that shows Officer Gnatek hesitated about anything. Anything he testified to. Nothing." These comments are highly prejudicial where they draw the jury's attention to the lack of testimony from the accused, which the accused have a Fifth Amendment right to elect not to testify.

VII.    Defendant-Appellant's Sixth Amendment right to effective assistance of trial counsel was violated where counsel failed to object to the prosecutor's improper rebuttal closing arguments concerning defendant's 5th Amendment right not to testify.

VIII.    Appellate counsel's performance was deficient and prejudicial in failing to raise the above mentioned claims on [the] appeal of right.

The respondent filed an answer contending that the claims were procedurally defaulted and lack merit.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

-7-

>    (1) resulted in a decision that was contrary to, or involved an unreasonable
>    application of, clearly established Federal law, as determined by the Supreme Court
>    of the United States; or
>
>    (2) resulted in a decision that was based on an unreasonable determination of the
>    facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Therefore, federal courts normally are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law.  *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).  Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable."  *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

>    A state-court decision will certainly be contrary to [the Supreme Court's] clearly
>    established precedent if the state court applies a rule that contradicts the governing
>    law set forth in our cases. . . .
>
>    A state-court decision will also be contrary to this Court's clearly established
>    precedent if the state court confronts a set of facts that are materially
>    indistinguishable from a decision of this Court and nevertheless arrives at a result
>    different from [the Court's] precedent.

-8-

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11; *see also Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

## A.

The petitioner first contends that his due process rights were violated because there was insufficient evidence presented to show that he intended to kill Officer Gnatek, and therefore his conviction for assault with intent to murder is invalid. It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). The critical inquiry on habeas review of the sufficiency of the evidence to support a criminal conviction is

-9-

whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  [T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted) (emphasis in original).  A federal court may not reweigh the evidence or redetermine the credibility of the witnesses.  *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  "It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing  *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992)).  A habeas court must defer to the fact finder for its assessment of the credibility of witnesses.  *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003). The Court does not need to be convinced that the petitioner is actually guilty beyond a reasonable doubt.  *Walker v. Russell*, 57 F. 3d 472, 475 (6th Cir. 1995).  The sufficiency of evidence "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n.16, and through the framework of 28 U.S.C. § 2254(d).  *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).  Therefore, a court reviewing a claim of insufficient evidence on habeas review must accord "deference at two levels . . . first, to the jury's verdict as contemplated by *Jackson*, and, second, to the state court's consideration of the jury's verdict as dictated by AEDPA." *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007).

Under Michigan law, the elements of assault with intent to commit murder in Michigan are: "(1) an assault; (2) with an actual intent to kill; (3) which if successful, would make the killing murder." *Warren v. Smith,* 161 F.3d 358, 361 (6th Cir. 1998) (quoting *People v. Plummer*, 229

Mich. App. 293, 306, 581 N.W.2d 753, 759 (1998)).  The intent element for this crime is not the same as the "malice" element necessary to prove murder.  Under state law, malice may be proved by showing an intent to kill, but it also may be proved by showing an intent to inflict great bodily harm, or a wanton and wilful disregard of the likelihood that the natural tendency of the actor's behavior is to cause death or great bodily harm.  *See People v. Aaron*, 409 Mich. 672, 714, 299 N.W.2d 304, 319 (1980).  To prove the crime of assault with intent to murder, the state must show that at the time of the assault, the defendant harbored the actual intent to kill.  *People v. Taylor*, 422 Mich. 554, 567, 375 N.W.2d 1, 7 (1985) (citing *Maher v. People*, 10 Mich. 212, 217-218 (1862); *Roberts v. People*, 19 Mich. 401, 415-416 (1870)).  Of course, that intent may be proved by circumstantial evidence.  *Id.* at 568, 375 N.W.2d at 8 (quoting *Roberts*, 19 Mich. at 415-16) (observing that the jury may consider "[t]he nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, his conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made").  The use of a lethal weapon will support an inference of an intent to kill.  *In re Guilty Plea Cases*, 395 Mich. 96, 130, 235 N.W.2d 132, 145 (1975).

In the present case, Officer Gnatek testified that the petitioner pulled a handgun from his waistband, turned in his direction, looked directly at him, and fired a single shot.  The officers testified that the petitioner was only several feet away from them when he fired his weapon.  There was also testimony that the petitioner attempted to fire additional gunshots at the police as he was entering the apartment building on Whitmore Street in an attempt to escape.  When viewed in a light

-11-

most favorable to the prosecution, the Court has little trouble finding sufficient evidence from which the jury could have inferred an actual intent to kill, rendering the petitioner guilty of the crime beyond a reasonable doubt.

The Michigan Court of Appeals rejected the petitioner's sufficiency of evidence argument. That decision was neither contrary to nor an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented at trial. The petitioner is not entitled to habeas relief on his first claim.

B.

In the petitioner's second, third, and sixth claims, he complains of prosecutorial misconduct that deprived him of a fair trial. The respondent argues that the petitioner failed to preserve these claims because he did not lodge a contemporaneous objection at trial. He contends that the Court may not consider procedurally defaulted claims unless "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). However, the doctrine of procedural default is not a jurisdictional bar to review of the merits of an issue, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Because the claims lack merit, the Court will proceed directly to the merits of the petitioner's claims.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir.

-12-

2003)).  Prosecutorial misconduct will form the basis for a new trial and habeas relief only if the alleged misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "To constitute a denial of due process, the misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Byrd v. Collins*, 209 F.3d 486, 529-30 (6th Cir. 2000) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)).  The first question to consider is whether the prosecutor's conduct or remarks were improper.  *Slagle v. Bagley*, 457 F.3d 501, 515-16 (6th Cir. 2006).  The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case," *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982), considering four factors: "(1) the likelihood that the remarks would mislead the jury or prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial." *Bowling*, 344 F.3d at 512-13.  The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

<div align="center">1.</div>

In his second habeas claim, the petitioner contends that he was denied a fair trial when the prosecutor elicited prejudicial testimony from Officer Gnatek concerning his prior encounters with the petitioner.  On direct examination of Officer Gnatek, the prosecutor asked him if he previously had seen the petitioner at the apartment building at 725 Whitmore Street.  Officer Gnatek replied, "I believe I've investigated the defendant before, but I can't be one hundred percent sure."  The

<div align="center">-13-</div>

petitioner's counsel objected to this line of questioning as being irrelevant, and the trial court judge sustained the objection.  There is no indication that the prosecutor ever mentioned Officer Gnatek's testimony on this subject again during the trial.

In the present case, Officer Gnatek's volunteered remark that he may have investigated the petitioner in the past did not deprive the petitioner of a fair trial because the impropriety was not flagrant or so pervasive as to permeate the atmosphere of an entire trial.  This is especially true since the learned trial court judge astutely sustained defense counsel's objection and Officer Gnatek's comment was never mentioned again during the trial. *See United States v. Tocco,* 200 F. 3d 401, 421 (6th Cir. 2000) (defendant was not denied fair trial on Racketeer Influenced and Corrupt Organizations Act conspiracy (RICO) charges by "blurt-outs" at trial by FBI agents indicating that defendant was a known member or boss of "La Cosa Nostra," inasmuch as the impropriety was not flagrant or so pervasive as to permeate atmosphere of the entire trial; district court promptly sustained objections to remarks; government was charged with proving defendant was member of La Cosa Nostra; and the improper comments constituted a very small part of evidence against defendant).  Because the conduct of the prosecutor was not improper, the Court need not evaluate the four *Bowling* factors.

<div align="center">2.</div>

In his third habeas claim, the petitioner contends that the prosecutor lowered the burden of proof by making misleading comments in his rebuttal argument about the reasonable doubt standard. The challenged language follows:

> "And don't let anybody tell you that hesitations on the part of the witness or on your part, or questions in your mind, are reasonable doubt.  If you hesitate, it doesn't mean reasonable doubt.  It's not about hesitation.  It's about can you, with moral certainty, as you were told, come out and say we believe he's guilty?. . . Just keep in your

<div align="center">-14-</div>

mind, when this comes up, if you believe he did it, if you believe he did it, even if you have questions about something peripheral, feel confident he did it. . . . You could hesitate."

Trial Tr, 4/26/2000, 74-75.

The Michigan Court of Appeals rejected the petitioner's claim on two grounds. First, that court found that the prosecutor's comments were a proper response to defense counsel's argument that the jurors must acquit the petitioner if they had any hesitation during deliberations. The court further found any error to be harmless, in light of the fact that the trial court properly instructed the jurors on the prosecutor's burden of proof. *Purifoy,* 2002 WL 484441 at *2.

In this case, the trial court instructed the jury that the petitioner was presumed innocent and that the prosecutor had the burden of proving the petitioner's guilt beyond a reasonable doubt. The court instructed the jury, "You must take the law as I give it to you. If a lawyer says something different about the law, follow what I say." Trial Tr., 4/26/2000, 84. The court then instructed the jury that a reasonable doubt is "a fair, honest doubt growing out of the evidence or lack of evidence. It is not merely an imaginary or possible doubt, but a doubt based on reason and common sense. A reasonable doubt is just that – a doubt that is reasonable, after a careful and considered examination of the facts and circumstances of this case." Trial Tr., 4/26/2000, 85. Like the state court of appeals, this Court does not find the prosecutor's remarks improper when taken in context. And any possible prejudice which might have resulted from the comment was cured by the trial court's instructions regarding the proper burden of proof. *Scott v. Elo*, 302 F. 3d 598, 604 (6th Cir. 2002).

The petitioner also alleges that the prosecutor engaged in improper vouching for the police witnesses, when he addressed the issue of the officers talking to one another about their testimony. The prosecutor stated:

-15-

"He didn't go in there with other witness (sic) and everybody and say by the way, you have to remember when he tells you where the car was, remember tell him it was parallel. . . . That's not what happened in that room. I wouldn't let it happen, because these guys know better."

Trial Tr., 4/26/2000, 80-81.

"'Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the [prosecutor] behind that witness. Improper vouching involves either blunt comments or comments that imply that the prosecutor has special knowledge of facts not in front of the jury.'" *United States v. Trujillo*, 376 F.3d 593, 607-08 (6th Cir. 2004) (quoting *United States v. Martinez*, 253 F.3d 251, 253-54 (6th Cir. 2001)).

In this case, the prosecutor improperly argued facts not in evidence because there was no testimony about the encounter in the witness room. He thereby vouched for the credibility of the police officers who testified on the basis of his personal knowledge. However, there is no likelihood that the petitioner was prejudiced by this comment. The improper statement was isolated. *See Slagle*, 457 F.3d at 527 (holding that four vouching comments over one hundred page closing argument did not render trial unfair). There is no evidence that the comment was intentionally, as it was stated during the prosecuting attorney's rebuttal argument, and the single usage does not "reveal a covert strategic use, repeated for the sake of emphasis." *Ibid.* The court instructed the jurors that the lawyers' arguments and statements were not evidence. Trial Tr. 4/26/2000, 86; *see United States v. Martinez*, 981 F.2d 867, 871 (6th Cir. 1992). In light of these factors, the prosecutor's comments about the officers' truthfulness did not render the trial unfair or rise to the level of a due process violation that warrants habeas relief. *See Byrd v. Collins,* 209 F.3d 486, 537

-16-

& n. 43 (6th Cir. 2000) (noting that the court has "not discovered, nor have the parties directed us, to any cases in which we have granted habeas relief on the basis of improper vouching").

<div align="center">3.</div>

The petitioner next claims that he was deprived of a fair trial because the prosecutor's closing argument constituted an impermissible comment on the petitioner's failure to testify, in violation of the Supreme Court's holding in *Griffin v. California*, 380 U.S. 609 (1965). *Griffin* held that neither the court nor the prosecutor may invite the jury to infer guilt from the defendant's decision not to testify. The State may not "solemnize [] the silence of the accused into evidence against him," 380 U.S. at 614, or "suggest[] to the jury that it may treat the defendant's silence as substantive evidence of guilt." *Baxter v. Palmigiano*, 425 U.S. 308, 319 (1976). However, although a prosecutor may not comment on the defendant's failure to testify or produce evidence, the prosecutor may summarize the evidence and comment upon "its quantitative and qualitative significance." *United States v. Bond*, 22 F.3d 662, 669 (6th Cir. 1994).

The petitioner contends that the prosecutor improperly commented upon the petitioner's failure to testify when he made the following comments during rebuttal argument:

> "I don't believe there's nothing [sic] in the record that impeaches Officer Gnatek's testimony, that there's nothing that shows Officer Gnatek hesitated about anything. Anything at all." (T. 4/26/2000, p. 69).

These remarks certainly did not directly implicate the petitioner's silence at trial. Perhaps they could be considered an oblique reference to a failure on the petitioner's part to offer some proof in the case, since any evidence that would impeach the officers' testimony would have to come from the petitioner, because he was the only other person at the scene. The Sixth Circuit has suggested four factors to consider in evaluating such indirect statements: "1) Were the comments 'manifestly

<div align="center">-17-</div>

intended' to reflect on the accused's silence or of such a character that the jury would 'naturally and necessarily' take them as such; 2) were the remarks isolated or extensive; 3) was the evidence of guilt otherwise overwhelming; 4) what curative instructions were given and when." *Bowling,* 344 F.3d at 514 (quoting *Lent v. Wells*, 861 F. 2d 972, 975 (6th Cir. 1988)).  The court of appeals has discouraged the conclusion that indirect remarks of this type amount to a manifest intent to comment on the right to remain silent where some other explanation for the prosecutor's remarks is equally plausible, such as when a comment is a fair response to a claim made by the defendant or his counsel. *See United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001).

Under that framework, it plainly appears that he prosecutor's closing remarks in this case were not an improper comment on the petitioner's failure to testify.  The Sixth Circuit has indicated that "'[g]eneral references to evidence as uncontradicted, while not recommended, may not reflect on the defendant's failure to testify where witnesses other than the defendant could have contradicted the evidence.'" *Byrd*, 209 F.3d at 534 (quoting *Raper v. Mintzes*, 706 F.2d 161, 164 (6th Cir.1983)); *see also Joseph v. Coyle,* 469 F.3d 441, 474 (6th Cir. 2006).  There were witnesses other than the petitioner who could have called into question Officer Gnatek's version of the events, particularly Officer Pritt and the evidence technician.  Furthermore, the petitioner is not be entitled to habeas relief on this claim because the prosecutor's remarks were neither flagrant or repeated, and the trial court "instructed the jury about [the petitioner's] right not to testify." *Joseph,* 469 F.3d at 474; Trial Tr. 4/26/2000, 89.

The petitioner is therefore not entitled to habeas relief on his second, third, or sixth claims.

-18-

C.

The petitioner also raises a number of ineffective assistance of counsel claims. In assessing whether the petitioner was deprived of effective assistance of counsel, the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687;

-19-

*McQueen v. Scroggy,* 99 F. 3d 1302, 1311 (6th Cir. 1996) (holding that a reviewing court applying *Strickland* must determine whether counsel's alleged errors "have undermined the reliability of and confidence in the result."). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985).

<div align="center">1.</div>

In his fourth claim, the petitioner alleges that his trial counsel was ineffective for failing to move for a directed verdict on the assault with intent to commit murder charge for which he was convicted. Because the evidence was sufficient to prove the elements of assault with intent to commit murder, counsel's failure to move for a directed verdict did not amount to ineffective assistance of counsel. *Maupin v. Smith*, 785 F.2d 135, 140 (6th Cir. 1986) ("Given our conclusion that there was sufficient evidence to support Maupin's conviction, we conclude that counsel's alleged error did not result in such prejudice as to meet the second part of the *Strickland* standard.").

<div align="center">2.</div>

In his fifth claim, the petitioner contends that his counsel was ineffective for failing to pursue an intoxication defense, in light of the fact that the petitioner's girlfriend told the police that the petitioner had been drinking alcohol prior to the shooting and had been drunk at the time of the shooting. The petitioner raised this claim in his motion for relief from judgment. The trial court judge denied this claim, finding that in light of the evidence presented at trial, the petitioner was unable to establish that a voluntary intoxication defense instruction would have been successful. *People v. Purifoy,* No. 99-006318, * 3 (Third Circuit Court, February 6, 2004).

Voluntary intoxication may be a defense to first-degree murder in Michigan. *People v. LaVearn*, 448 Mich. 207, 213, 528 N.W.2d 721, 723 (1995). However, federal courts have rejected

<div align="center">-20-</div>

ineffective assistance of counsel claims for failure to raise an intoxication defense on the ground that the level of intoxication needed to negate specific intent is so high that the defense is rarely successful. *Evans v. Meyer*, 742 F.2d 371, 374 (7th Cir. 1984); *see also Wilen v. Wainwright*, 793 F.2d 1190, 1194 (11th Cir. 1986). Moreover, pursuing an intoxication defense strategy is risky as it involves an implicit admission that the accused committed the act, and counsel is not ineffective for choosing to press other defenses. *See Byrd v. Collins*, 209 F.3d 486, 525 (6th Cir. 2000). The evidence in this case established that the petitioner pulled a handgun from his waistband, turned in the direction of Officer Gnatek, looked directly at him and fired a single shot. The petitioner then attempted to escape into a building, attempting to fire more shots at the police as he was entering the building. The petitioner then jumped out a window from the apartment building in a further attempt to escape. In this case, there was no evidence that the petitioner was so intoxicated that he was unable to point, shoot, and flee, so asking the jury to conclude that he was too drunk to form the specific intent to kill would have been a tall order indeed. Moreover, it appears that defense counsel attempted to locate the witness the petitioner now desires, but, according to the sentencing transcript, the effort to bring that witness to court was unsuccessful. The Court concludes that defense counsel was not ineffective for failing to present an intoxication defense in this case. *Kristi v. Foltz,* 804 F.2d 944, 946-47 (6th Cir. 1986).

3.

In his seventh claim, the petitioner contends that trial counsel was ineffective for failing to object to the prosecutor's improper argument in rebuttal, which the petitioner claims was an improper reference to the petitioner's Fifth Amendment right not to testify. This Court has already determined that the prosecutor's remarks in rebuttal argument were not an impermissible reference

to the petitioner's failure to testify. Because the prosecutor's comments did not specifically refer to the petitioner's silence, counsel's performance was not deficient for failing to object to the remarks. "[T]here can be no constitutional deficiency in counsel's failure to raise meritless issues." *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999).

<div align="center">4.</div>

In his eighth and final habeas claim, the petitioner contends his appellate counsel was ineffective for failing to raise his fourth, fifth, sixth, and seventh claims on his appeal of right. The Supreme Court has held that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Court explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

As noted above, the petitioner's fourth, fifth, sixth, and seventh claims are without merit. Because such claims are without merit, the petitioner is unable to show that appellate counsel's failure to raise these claims on his appeal of right was deficient, and thus fails to establish that he was denied the effective assistance of appellate counsel. *See McFarland v. Yukins*, 356 F.3d 688, 700 (6th Cir. 2004); *Mapes*, 171 F.3d at 413. The petitioner is therefore not entitled to habeas relief on his eighth claim.

<div align="center">-22-</div>

The Court therefore will deny the petitioner relief on his fourth, fifth, seventh, and eighth claims, because he has failed to establish that he was deprived of the effective assistance of trial or appellate counsel.

III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt # 1] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: February 23, 2009

<div style="border:1px solid black">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 23, 2009.

s/Felicia M. Moses
FELICIA M. MOSES

</div>

-23-